UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

AUDRIA WADDLE,                        )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )    Case No. CIV-25-409-G
                                      )
OKLAHOMA DEPARTMENT OF                )
HUMAN SERVICES,                       )
                                      )
        Defendant.                    )

## ORDER

Now before the Court is Defendant Oklahoma Department of Human Services'
Motion to Dismiss (Doc. No. 9), which among other things requests that Plaintiff Audria
Waddle's Complaint (Doc. No. 1)[1] be dismissed pursuant to Federal Rule of Civil
Procedure 12(b)(1). Plaintiff, appearing pro se, has raised arguments in opposition to the
request for dismissal in her Motion to Strike (Doc. No. 12),[2] Motion for Dismissal (Doc.
No. 13) (hereinafter "Pl.'s Resp."), and Supplement of July 7, 2025 (Doc. No. 20).

I.    *Background*

Plaintiff initiated this civil lawsuit against the Oklahoma Department of Human
Services ("DHS" or, as used by Plaintiff, "DHS/CPS") on April 9, 2025, alleging violations

---

[1] In subsequent filings, Plaintiff submitted amendments to the Complaint that do not
supersede the Complaint but include additional information. *See* Doc. Nos. 10, 14; *see
also* Order of June 25, 2025 (Doc. No. 16) at 2-3 (recognizing amendment to include
additional request for relief). The Court considers the additional information in these
filings as part of the Complaint.

[2] Plaintiff's Motion to Strike was denied to the extent it sought to strike portions of
Defendant's Motion to Dismiss. *See* Order of June 25, 2025 at 1-2.

of her constitutional rights when Defendant, on November 8, 2023, "illegally removed" Plaintiff's daughter, who was six years old at the time, from Plaintiff's custody based on the fraudulent allegations of a DHS caseworker. *See* Compl. at 2, 3; Compl. Ex. 1 (Doc. No. 1-1) at 1; *see also* Doc. Nos. 10, 14.

Plaintiff alleges the following facts in support of her claims:

- On September 20, 2023, Plaintiff took her daughter to an urgent care provider after noticing her daughter was behaving oddly. Compl. Ex. 1, at 1. Plaintiff's daughter had consumed an "edible" containing chocolate and marijuana that was on an elevated shelf in the closet of Plaintiff's bedroom. *Id.* Plaintiff's daughter had not told Plaintiff and did not tell the urgent care staff what she had done. *Id*.

- Because the daughter's symptoms were unexplained, the urgent care staff called an ambulance, and Plaintiff's daughter was transported to a hospital. *Id.* Plaintiff followed in her own vehicle. *Id.* During the drive, the daughter told one of the paramedics about the consumption of the edible. *Id.*

- The paramedic informed Plaintiff upon arrival at the hospital. *Id.* The paramedic said Plaintiff's daughter was fine, needed rest and to be monitored, and could go home. *See id.* Plaintiff signed discharge paperwork and left with her daughter. *Id.*

- About one month after this event, a DHS caseworker came to Plaintiff's residence and "demanded entry," which Plaintiff denied due to not knowing if the caseworker was making the request legitimately. *Id.* Plaintiff explained to the caseworker that the paramedic had said that her daughter was fine and then brought her daughter to the door so the caseworker could observe her daughter. *Id.* The caseworker

attempted to enter Plaintiff's residence by force but was again denied entry by Plaintiff. *See id.*

- The DHS caseworker returned about a week later with a paper purporting to authorize taking the daughter for a medical exam. *See id.* The caseworker was accompanied by a law enforcement officer. *See id.* Plaintiff again refused entry into the home, said there was no reason for a medical check, and stated that Plaintiff would accompany her daughter if her daughter went anywhere. *Id.* The law enforcement officer removed the caseworker from Plaintiff's property after a conversation about whether Plaintiff's daughter would go with the caseworker. *Id.*

- The DHS caseworker then manufactured allegations against Plaintiff, presenting them in a document that was signed by a district attorney and a judge. *See id.* The caseworker was motivated to create false allegations because Plaintiff had denied her requests to enter Plaintiff's residence. *Id.* Based on the document, a police officer "ripped" Plaintiff's daughter from underneath a bed where she was hiding and then the caseworker put Plaintiff's daughter in a car and "slammed" the door shut in the child's face. *Id.* at 1-2. The caseworker appeared to taunt Plaintiff upon placing the child in the car. *See id.* at 2.

- Plaintiff attended a hearing in state court regarding custody of her daughter. *Id.* During the hearing, Plaintiff left the courtroom due to a "trauma response" Plaintiff experienced while the caseworker testified. *Id.* Because Plaintiff had left the courtroom, the judge directed Plaintiff to participate in a treatment plan, which included drug testing, parenting and domestic violence education, and a

3

psychological evaluation and counseling. *Id.* The drug and domestic violence requirements were inapplicable because Plaintiff did not use drugs and had no connection to domestic violence. *See id.* Plaintiff was misdiagnosed with borderline personality disorder by a doctor who was working for or with DHS. *See id.* Plaintiff challenged the diagnosis at her own expense and was found to have post-traumatic stress disorder from prior events and an adjustment disorder caused by the removal of her child. *Id.* Plaintiff completed the treatment plan. *See id.*

- Plaintiff was pregnant with her son during this time. *Id.* DHS personnel delayed acknowledging Plaintiff's completion of the treatment plan in order to obtain custody of her son. *Id.* Soon after Plaintiff's son was born, DHS took custody of him on the basis that Plaintiff's daughter was already in state custody. *Id.* Plaintiff was informed that she could have her children returned if she completed a second treatment plan. *Id.*

- Plaintiff's daughter and son have both suffered and been permanently harmed while in the custody of a foster parent arranged through DHS. *See id.* Plaintiff's daughter was injured in an incident involving a barbed wire fence because the foster parent was not watching her. *Id.* Plaintiff's daughter has not been dressed properly during cold temperatures, has been psychologically and emotionally abused, has experienced a mental breakdown and attempted suicide, has been bullied, has acted out toward the foster parent, and has experienced incontinence, all as a result of being removed from Plaintiff's care. *See id.* Plaintiff's son has not been taken to the doctor in a timely fashion to address breathing issues and has been deprived of

being breast-fed and spending time with his mother, again as a result of being removed from Plaintiff's care.  *See id.* at 4.

- These negative experiences and behaviors are the product of Plaintiff's children being taken into DHS custody wrongfully and would not have occurred but for the false allegations that prompted the improper initial removal of Plaintiff's daughter from Plaintiff's custody.  *See id.* at 2.

- Plaintiff seeks monetary damages for herself and her children, as well as the immediate return of her children to her care.  *See* Compl. at 4; Doc. Nos. 10, 14.

## II.    Standard of Decision

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). As the party asserting federal jurisdiction, Plaintiff bears "the burden of alleging the facts essential to show jurisdiction."  *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *accord* Fed. R. Civ. P. 12(h)(3).

"Whether a defendant is immune from suit under the Eleventh Amendment . . . [is] [a] question[] of the federal courts' subject matter jurisdiction."  *Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005).  "A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction takes one of two forms: a facial attack or a factual attack."  *Bollenbach v. United States*, No. CIV-19-233-G, 2020 WL 1550196, at *2 (W.D. Okla. Mar. 31, 2020)

(citing *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015)).  Here, Defendant advances a facial attack, arguing that Plaintiff's allegations do not support the Court's exercise of subject-matter jurisdiction.  *See* Def.'s Mot. at 5-7.  "In reviewing a facial attack, a district court confines its analysis to the pleadings and must accept the allegations in the complaint as true."  *Bollenbach*, 2020 WL 1550196, at *2.

Pro se filings "are to be construed liberally," but the Court will not "assume the role of advocate for the pro se litigant."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## III.    Discussion

Defendant argues that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Defendant's Eleventh Amendment immunity precludes the Court's exercise of jurisdiction over Plaintiff's claims.  *See* Def.'s Mot. at 3. Defendant notes that Plaintiff is a citizen of Oklahoma and that Defendant is an Oklahoma state agency.

The Eleventh Amendment directs that "'[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'"  *Good v. U.S. Dep't of Educ.*, 121 F.4th 772, 788 (10th Cir. 2024) (alteration in original) (quoting U.S. Const. amend. XI), *petition for cert. filed*, No. 24-992 (U.S. Mar. 18, 2025).  The Eleventh Amendment "embodies the privilege of the sovereign not to be sued without its consent" and, in practice, "operates as a jurisdictional bar that precludes unconsented suits in federal court against a state."  *Id.* at 788-89 (internal quotation marks omitted).

6

Eleventh Amendment immunity applies to the state itself and also to any "arm of the state." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1232 (10th Cir. 1999); *see Miller v. Okla. Dep't of Hum. Servs.*, No. CIV-22-507-D, 2022 WL 16541217, at *2 (W.D. Okla. Oct. 28, 2022). DHS is recognized to be an arm of the state for the State of Oklahoma and, thus, protected from suit under the Eleventh Amendment. *See Miller*, 2022 WL 16541217, at *2; *Garneau v. Child.'s Hosp.*, No. CIV-24-462-R, 2024 WL 4376158, at *3 (W.D. Okla. Oct. 2, 2024). As a result, "a party seeking to assert a claim against [DHS] . . . must . . . point to a specific waiver of immunity in order to establish jurisdiction." *Pueblo of Jemez*, 790 F.3d at 1151 (internal quotation marks omitted). Plaintiff can point to no such waiver here: the State of Oklahoma has not waived its immunity from suit in federal court. *Hensel v. Off. of the Chief Admin. Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994) (citing Okla. Stat. tit. 51, § 152.1(B)). Nor has Congress abrogated the State of Oklahoma's immunity through enactment of 42 U.S.C. § 1983. *See Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012).

Plaintiff presents several arguments for why this Court has jurisdiction over Plaintiff's claims notwithstanding the long recognition that DHS is protected from suit in federal court by Eleventh Amendment immunity. The Court will discuss these arguments in turn.

First, Plaintiff contends that the text of the Eleventh Amendment does not bar citizens of the State of Oklahoma from suing the State in federal court, and she is such a citizen. *See* Pl.'s Mot. to Strike at 9. The Supreme Court holds, however, "that the Eleventh Amendment bars a citizen from bringing suit against the citizen's own State in federal

court, even though the express terms of the Amendment refer only to suits by citizens of another State." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *see also Good*, 121 F.4th at 788 ("Notwithstanding its plain language . . . [t]he Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." (emphasis and internal quotation marks omitted)).

Plaintiff next argues that Defendant's Eleventh Amendment immunity is overcome by the express grants of jurisdiction in Article III, Section 2 of the United States Constitution and 28 U.S.C. § 1331. *See* Pl.'s Resp. at 1. As to Article III of the Constitution, Section 2 states that "[t]he judicial Power" of federal courts "shall extend to all Cases . . . arising under this Constitution" and "the Laws of the United States." U.S. Const. art. III, § 2, cl. 1. The Supreme Court has explained that the adoption of the Eleventh Amendment "limit[ed] the grant of judicial authority in Art. III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). As a result, the Eleventh Amendment takes precedence and properly precludes Plaintiff from asserting her claims against Defendant in this federal court. *See id.* As to 28 U.S.C. § 1331, that statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Contrary to Plaintiff's argument, it has long been recognized that "general jurisdiction statutes, such as 28 U.S.C. § 1331, do not waive the [g]overnment's sovereign immunity." *Pueblo of Jemez*, 790 F.3d at 1151 (internal quotation marks omitted).

Finally, Plaintiff contends that Defendant is not entitled to Eleventh Amendment immunity because there are exceptions to immunity that permit claims to be brought

8

against state officers in their individual capacities for willful or negligent conduct, as well as against such officers in their official capacities for injunctive relief to curb ongoing civil rights violations. *See* Pl.'s Mot. to Strike at 9; Pl.'s Suppl. at 7. The Complaint does not include such claims, however. The Complaint asserts claims only against Defendant and not against any state officer, whether in an individual or official capacity. *See* Compl. at 2.

Because the Eleventh Amendment protects Defendant Oklahoma Department of Human Services from being sued in federal court on the claims raised by Plaintiff, the Complaint must be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. *See Good*, 121 F.4th at 788-89; *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001).[3]

IV.    *Plaintiff's Petition for Contempt of Court Proceedings*

Plaintiff has requested that the Court initiate proceedings to hold Defendant in contempt pursuant to 18 U.S.C. § 401 for allegedly violating the Court's Order of June 25, 2025, by not immediately returning Plaintiff's children to her. *See* Pl.'s Pet. (Doc. No. 26). Defendant did not file a response.

The Court will assume that it has jurisdiction to find Defendant in contempt for disobeying an order entered prior to the determination herein that the Court lacks subject-matter jurisdiction over the action itself. *Cf. U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 79 (1988); *United States v. United Mine Workers of Am.*, 330 U.S. 258,

---

[3] Because the Court concludes that dismissal is warranted based on Eleventh Amendment immunity, the Court need not reach Defendant's arguments for dismissal based on *Younger* abstention or for a failure to plead a claim upon which relief may be granted.

294 (1947); *AAAG-Cal., LLC v. Kisana*, No. 20-cv-00026, 2021 WL 2383002, at *1 (D. Utah June 10, 2021).

Still, "[t]o be held in contempt, a court must find the party violated a specific and definite court order and the party had notice of the order." *In re Lucre Mgmt. Grp., LLC*, 365 F.3d 874, 875 (10th Cir. 2004) (internal quotation marks omitted). Plaintiff has made no such showing. Contrary to Plaintiff's assertion, the Court's June 25, 2025 Order did not direct Defendant to return Plaintiff's children to her. *See* Order of June 25, 2025, at 2-3. Rather, in that Order, the Court granted Plaintiff's request to amend her pleading to add the immediate return of her children as a claim for relief in this lawsuit. *See id.* Therefore, Plaintiff has not shown any plausible basis to find that Defendant failed to comply with the June 25, 2025 Order. Plaintiff's request that the Court hold Defendant in contempt or otherwise initiate contempt proceedings is DENIED.

CONCLUSION

For the reasons stated herein, Defendant Oklahoma Department of Human Services' Motion to Dismiss is GRANTED.[4] Plaintiff's Complaint (Doc. No. 1) is DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiff's Petition (Doc. No. 26) is DENIED.

A separate judgment shall be entered.

---

[4] Although Plaintiff has filed various documents supplementing her factual contentions, the proposed new allegations do not change the Court's determinations that it lacks subject-matter jurisdiction in light of Defendant's Eleventh Amendment immunity or that Defendant has not violated the July 25, 2025 Order or otherwise acted in a manner warranting an initiation of contempt proceedings.

10

IT IS SO ORDERED this 20th day of March, 2026.

CHARLES B. GOODWIN
United States District Judge